1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

FILED

JAN 2 3 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

TOMMY RICE,
Plaintiff,

Case No. **5:26 CV 188**
Judge

v.

TRI COUNTY TRANSPORT, INC.;
TRI COUNTY PALLETS, INC.;
PEOPLE'S CHECK SERVICES, INC.,
RENEA MACKO, individually;
GARY BRADFORD, individually;
ERIC MCCOY, individually;
Defendants.

**JUDGE BARKER**

**MAG. JUDGE GREENBERG**

-----------------------------------------------------------

## COMPLAINT
## (Jury Trial Demanded)

-----------------------------------------------------------

1Plaintiff Tommy Rice ("Plaintiff"), proceeding pro se, for his Complaint against Defendants Tri County Transport, Inc., Tri County Pallets, Inc., and People's Check Services, Inc. (collectively, "Defendants"), alleges as follows:

## I. JURISDICTION AND VENUE

2. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in this District and Defendants conduct business here.

6. Plaintiff does not assert Title VII claims against Defendants Macko or McCoy in their individual capacities, but asserts state-law claims against them pursuant to this Court's supplemental jurisdiction.

## II. PARTIES

7. Plaintiff Tommy Rice is an individual residing in Summit County, Ohio.

8. Defendant Tri County Transport, Inc. is an Ohio corporation engaged in interstate commercial transportation and was Plaintiff's employer within the meaning of Title VII.

9. Defendant Tri County Pallets, Inc. is an Ohio corporation that exercised control over Plaintiff's employment, training, discipline, and termination and acted as a joint employer.

10. Defendant People's Check Services, Inc. is an Ohio corporation engaged in DOT-regulated drug specimen collection services and acted as an agent of Plaintiff's employer for purposes of the drug testing at issue.

11. Defendant Renea Macko is an individual residing in Ohio and was, at all relevant times, an owner, officer, and decisionmaker for Tri County Pallets, Inc. Defendant Macko is sued in her individual capacity for her personal participation in and ratification of the conduct giving rise to Plaintiff's state-law claims.

12. Defendant Gary Bradford is an individual residing in Ohio and was, at all relevant times, Plaintiff's direct supervisor at Tri County Pallets, Inc. Defendant Bradford possessed supervisory authority over Plaintiff's work assignments, scheduling, training progression, testing directives, and access to continued employment.

13. Defendant Bradford is sued in his individual capacity only for his personal participation in the conduct giving rise to Plaintiff's state-law claims. Plaintiff does not assert Title VII claims against Defendant Bradford in his individual capacity.

14. Defendant Eric McCoy is an individual residing in Ohio and was, at all relevant times, the owner and specimen collector for People's Check Services, Inc. Defendant McCoy is sued in his individual capacity for his direct and personal participation in the conduct giving rise to Plaintiff's state-law claims.

3

# III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity
Commission ("EEOC"), Charge No. 532-2025-04669.

16. Plaintiff received a Notice of Right to Sue on January 16, 2026.

17. This action is filed within 90 days of receipt of the Notice of Right to Sue. All administrative prerequisites have been satisfied.

# IV. FACTUAL ALLEGATIONS

## A. Employment and Training

18. Plaintiff was hired on or about February 11, 2025, as a commercial driver trainee.

19. Plaintiff successfully completed Defendants' mandatory training program.

20. On or about March 4, 2025, Plaintiff was issued a Training Certificate certifying completion of entry-level driver training in accordance with 49 C.F.R. § 380.503, including driver qualification, hours of service, driver wellness, and whistleblower protection.

21.. Plaintiff also successfully completed a road test and performance evaluation, documenting satisfactory performance in driving, backing, docking, and safety-related tasks.

22.. Plaintiff's trainer, Wallace Gene Booth, confirmed that Plaintiff completed training satisfactorily and was qualified to receive his own truck.

23. During training, Plaintiff was provided Defendants' written Fleet Safety Program (DOT Regulated), which states that driver-trainer evaluations and certifications are central to hiring, retention, and termination decisions.

## B. DOT-Mandated Observed Drug Test

24. On or about March 3, 2025, at the end of a workday, Plaintiff was instructed by his supervisor Gary to immediately report for a DOT-mandated observed urine drug test at People's Check Services in Barberton, Ohio.

25. Upon arrival, Plaintiff observed that only one individual was present, who identified himself as both the owner and specimen collector, Eric McCoy.

26. Defendant Eric McCoy personally conducted the observed drug test at issue and directly engaged in the sexually intrusive conduct forming the basis of Plaintiff's invasion of privacy and intentional infliction of emotional distress claims.

27. Before Plaintiff's test, the collector made an inappropriate comment regarding a prior donor, stating the person was "antsy."

28. Before going to go to the collector room, the collector gave Rice a speech claiming that he had 90 pages of DOT regulations to follow and Rice had 90 pages of DOT regulations to adhere to so everything he was about to do in the room was according to DOT regulations.

29. During the observed collection, the collector told Rice he was required to pull his pants below his knees, lift his shirt above his belly button, turn sideways on the toilet,( a position where Rice's genitals were not directly over the toilet and Rice would be directly facing the specimen collector approximately two feet away from Rice), and hold the specimen cup to the side while the collector visually observed Plaintiff's genital area.

30. The collector further instructed Plaintiff to "hold the cup to the side," not aligned with the urine stream, and to "get comfortable" in that position.

31. The collector made some type of moaning sound while standing face-to-face with Rice genitals exposed for minutes.  Positioned on one side of  the half wall feet away, Rice could see the collector's right arm slowly moving rhythmically beneath the half wall. The conduct was not applied neutrally, but performed in a sexualized manner. Rice felt completely creeped out by the collectors sexually harassing actions and demeanor.

32. Rice reasonably believed the observed collection conduct constituted sexual harassment/sex-based humiliation and a hostile environment and he complained to management to stop it.

33. Plaintiff became anxious and distressed and was unable to urinate on the first attempt.

34. During subsequent attempts, the collector stated that Plaintiff's driver's license and truck would be in jeopardy if he did not complete the test, further increasing Plaintiff's distress.

35. Plaintiff ultimately completed the test on a later attempt.

36. A substantial portion of this encounter was audio recorded by Plaintiff.

**C. Protected Activity**

37. After completing the test, Plaintiff objected to the manner in which the observed drug test was conducted and stated that the conduct was unprofessional and inappropriate.

38. As Plaintiff exited the facility, the collector stated, "I'm calling Renea."

39. Plaintiff immediately texted his supervisor Gary, describing the incident and requesting that he not be sent back to People's Check Services again because of Eric Mccoy's conduct.

40. Gary made clear that Tri-County Pallets had an exclusive and explicit relationship with People's Check Services.

41. On March 4, 2025, Plaintiff was called by Gary before work who told Rice to report to the office after he clocked in. Inside the office was a meeting set up with Gary and company owner Renea Macko, which Plaintiff recorded.

42. During the meeting, Plaintiff explained his concerns regarding the observed drug test.

43. Gary and Renea acknowledged that the conduct Plaintiff described was not required as part of DOT drug testing procedures.

44. Rice's complaints expressly described the conduct as sexually harassing, intrusive and humiliating, and requested not to be subjected to that specific collector or testing location again.

45. Renae and Gary acknowledged the described conduct was not required and treated Rice's complaint as a complaint of inappropriate sexual conduct.

46. Plaintiff's objections and complaints constituted protected activity under Title VII, as he opposed conduct he reasonably believed to be inappropriate and sexually humiliating.

47. Defendant decided to withhold assignment of a truck and terminate Rice after receiving and discussing Rice's complaint about the sexually humiliating observed collection.

48. Gary made clear that Tri-County Pallets had an exclusive and explicit relationship with people's check services.

49. On the day of the drug test Rice was specifically directed to report to people's check service services for a mandatory urine analysis by supervisor Gary.

50. At all relevant times, Defendant Gary, Plaintiff's direct supervisor, had actual knowledge of the sexually intrusive and humiliating conduct described above. Gary received Plaintiff's complaint immediately following the observed drug test, participated in the March 4, 2025 meeting regarding Plaintiff's objections, acknowledged that the conduct was not required by DOT regulations, and failed to take any corrective or protective action on Plaintiff's behalf.

51. There was an ongoing service relationship between Tri County Pallets and People Check Services that long preceded Rice entering the picture.

52. In addition, People Check Services owner, Eric McCoy, specifically texted Renea at the same time Rice was texting Gary.

53. Renea has an email on her server from that day where Eric said that Rice was noncompliant, although Rice has an audio recording demonstrating that he was completely compliant during the drug test.

54. Defendant Renea Macko knowingly relied on and ratified false allegations of noncompliance provided by Defendant McCoy and authorized or approved adverse employment action against Plaintiff, thereby contributing to Plaintiff's injuries.

55. Eric's statement in that email contributed to Renee's decision to terminate Rice's employment wrongly.

56. People's Check Services interfered with Plaintiff's employment opportunities by providing knowingly false information to Plaintiff's employer.

**D. Adverse Employment Action**

57. That same day, March 4, 2025, Plaintiff's training completion was confirmed, and Plaintiff was permitted to photograph his completed training certificates.

58. Plaintiff was scheduled to receive his own truck on Monday, March 10, 2025, and his name was placed on company driver rosters and scheduling systems.

59. Supervisor Gary informed Plaintiff and trainer Booth that he would provide Plaintiff with truck keys on Friday, March 7, 2025, but neither Gary nor Defendant Renea Macko appeared at the facility that day and did not respond to repeated calls or messages from trainer Gene Wallace Booth, while he and Rice sat in the parking lot in front of Gary's office at the end of the workday.

60. On March 10, 2025, Plaintiff was called into the office and informed that his employment was terminated.

61. On that same date, Defendants issued Plaintiff a written termination letter dated March 10, 2025, signed by Defendant Renea Macko, stating in substance that:

62. Plaintiff had "difficulty with backing up" during training;

63. Plaintiff had already received "additional training beyond the standard 2–3 day training period";

64. After approximately "3.5 weeks of training," backing "remained a significant challenge";

65. Defendants asserted they were "unable to extend the training period any further" and terminated Plaintiff's employment "effective immediately."

66. The termination letter further encouraged Plaintiff to "reapply in the future" if he improved his backing skills, implicitly acknowledging Plaintiff's general employability.

8

67. Defendants' stated reason for termination was false and pretextual, as it directly contradicted: (1) Plaintiff's completed training certificate issued days earlier; (2) Plaintiff's successful road test and performance evaluation; and (3) The express approval of Plaintiff's trainer, Wallace Gene Booth, the only individual who directly observed Plaintiff's driving throughout training.

### (1) Road Test – Section 4 "Backing and Parking" Rated Satisfactory

68. Defendants' stated justification is further contradicted by Plaintiff's official Record of Road Test, completed and signed by trainer Wallace Gene Booth.

69. In that document, Section 4 ("Backing and Parking") is fully checked off as "Satisfactory" in every applicable category, reflecting that Plaintiff successfully demonstrated required backing, parking, and maneuvering skills in accordance with company and DOT expectations.

70. No deficiencies, failures, or safety concerns were noted in Section 4 or elsewhere on the Road Test record.

### (2) Contemporaneous Handwritten Training Notes Showing Improvement (March 5–7, 2025)

71. In addition to the formal Road Test, trainer Wallace Gene Booth maintained contemporaneous handwritten training notes documenting Plaintiff's real-world docking and backing performance during the final days of training.

72. Those notes reflect measured docking times on March 5, March 6, and March 7, 2025, showing that Plaintiff's backing and docking times consistently improved each day, with several docks completed in approximately 4–8 minutes, depending on yard layout and conditions.

73. These handwritten notes further corroborate that Plaintiff's backing skills were developing appropriately, improving with experience, and consistent with expectations for a trainee completing entry-level commercial driver training.

### (3) Backing Times Consistent with Industry Expectations

74. Plaintiff's documented docking and backing times were also consistent with, and in many instances better than, commonly accepted industry expectations for safe backing maneuvers.

75. Industry sources and driver-training guidance widely recognize that even experienced commercial drivers may take 5–10 minutes to safely complete a routine backing maneuver, and 15–30 minutes or more in tighter or more complex situations, with safety—not speed—being the controlling priority.

76. Plaintiff's documented backing times therefore fall well within reasonable and accepted parameters and further undermine Defendants' claim that Plaintiff lacked adequate backing or docking ability.

77. Plaintiff's termination occurred within days of, and in close temporal proximity to, Plaintiff's protected complaints.

78. Defendants' stated reason conflicts with their own written Fleet Safety Program. A

79. Plaintiff later learned that Defendant Renea Macko maintained a close personal relationship with the owner and specimen collector at People's Check Services.

80. On March 11, 2025, trainer Booth text-messaged Plaintiff expressing distress over Plaintiff's termination and provided contemporaneous training notes documenting Plaintiff's improvement in backing and docking during the final days of training, including March 5, 6, and 7, 2025.

81. In the weeks following Plaintiff's termination, trainer Booth continued to communicate with Plaintiff and encouraged him to seek employment elsewhere, further undermining Defendants' stated rationale for termination.

### E. Post-Termination Retaliation / Employment Interference

82. After Plaintiff's termination, Defendants provided negative and misleading performance information to at least one prospective employer.

83. Plaintiff was informed by a prospective employer on January 13, 2026, on Pulse app that Tri-County Pallets had relayed the same performance-based justification used to terminate him, and that Rice would not be hired because of that information.  This was a trucking job, hauling big machinery that paid $2,000 to 2,500 a week.

84. This interference occurred after Plaintiff filed his EEOC charge.

85. As a result, Plaintiff was not hired.

86. Defendants' conduct materially interfered with Plaintiff's ability to obtain employment and constitutes post-termination retaliation under Title VII.

# V. CAUSE OF ACTION

### COUNT I — Retaliation (Title VII)
### 42 U.S.C. § 2000e-3(a)

87. Plaintiff engaged in protected activity by opposing conduct he reasonably believed to be sex-based harassment and sexually humiliating conduct.

88. Defendants had knowledge of Plaintiff's protected activity.

89. Defendants subjected Plaintiff to adverse employment actions, including termination and post-termination employment interference.

90. A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions.

91. Defendants acted willfully and in reckless disregard of Plaintiff's federally protected rights.

92. This count is asserted only against the employer Defendants and not against Defendants Macko or McCoy in their individual capacities.

### Count II — Hostile Work Environment (Sex-based harassment)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e-2(a)

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. Plaintiff was subjected to unwelcome conduct of a sexual nature during a DOT-mandated observed urine drug test administered by Defendant People's Check Services, Inc., acting as an agent of Plaintiff's employer.

95. The conduct included, but was not limited to:

a. Requiring Plaintiff to pull his pants below his knees and lift his shirt above his belly button;

b. Positioning Plaintiff sideways on the toilet while facing the specimen collector at close proximity with Plaintiff's genitals exposed;

c. Directing Plaintiff to hold the specimen cup away from the urine stream;

d. Prolonged face-to-face visual observation of Plaintiff's exposed genital area;

e. Sexually suggestive comments, sounds, and demeanor by the specimen collector during the collection process.

96. The conduct was sexually intrusive, humiliating, and degrading, and was based on sex.

97. The conduct was severe, occurred in a coercive employment-related setting, and interfered with Plaintiff's dignity, bodily privacy, and psychological well-being.

98. Plaintiff reasonably perceived the environment as hostile and abusive, and a reasonable person in Plaintiff's position would have found the conduct hostile, intimidating, and sexually humiliating.

99. Plaintiff's employer subjected Plaintiff to this hostile work environment by directing him to Defendant People's Check Services for the drug test and by failing to prevent or correct the sexually intrusive conduct.

100. At all relevant times, Defendant Gary Bradford acted as Plaintiff's supervisor within the meaning of Title VII and possessed authority over Plaintiff's work assignments, training progression, scheduling, testing directives, and access to continued employment. Gary Bradford exercised this authority by directing Plaintiff to the drug testing facility at issue, participating in the March 4, 2025 meeting regarding Plaintiff's complaint, acknowledging that the sexually intrusive conduct was not required by DOT regulations, and failing to take prompt or effective corrective action. Gary Bradford's

knowledge and inaction are therefore imputed to the employer Defendants for purposes of Title VII liability.

101. After Plaintiff complained, Defendants acknowledged that the described conduct was not required by DOT regulations, confirming that the conduct exceeded lawful testing procedures.

102. Defendants failed to take prompt and effective remedial action and instead retaliated against Plaintiff for opposing the sexually hostile conduct.

103. As a direct and proximate result of Defendants' actions, Plaintiff suffered emotional distress, humiliation, and other damages.
Defendants' conduct violated Title VII, 42 U.S.C. § 2000e-2(a).

104. This count is asserted only against the employer Defendants and not against Defendants Macko, Bradford, or McCoy in their individual capacities.

**COUNT III — State-Law Tort Claims**
**(Against People's Check Services, Inc., Eric McCoy, Individually,**
**and as Applicable, Tri County Pallets, Inc. and Renea Macko, Individually)**

**A. Invasion of Privacy — Intrusion Upon Seclusion**

105. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

106. At all relevant times, Defendants Eric McCoy and Renea Macko personally participated in, directed, authorized, ratified, and/or knowingly failed to prevent the tortious conduct described herein. Each is therefore individually liable for Plaintiff's state-law claims under Ohio law.

107. Defendant People's Check Services, Inc., through its owner and specimen collector, intentionally intruded upon Plaintiff's bodily privacy in a manner that would be highly offensive to a reasonable person.

108. The intrusion included forced exposure of Plaintiff's genitals, unnecessary positioning, prolonged visual observation, and sexually intrusive conduct during a coerced drug-testing procedure.

109. Plaintiff had a reasonable expectation of privacy in his body and genital area, even within the context of a lawful DOT drug test.

110. The intrusion was not justified by DOT regulations or legitimate testing requirements.

111. As a direct and proximate result of the intrusion, Plaintiff suffered emotional distress, humiliation, and psychological harm.

## B. Intentional Infliction of Emotional Distress

112. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

113. Defendants engaged in extreme and outrageous conduct by subjecting Plaintiff to sexually humiliating and coercive treatment during an observed drug test, followed by retaliation and false accusations of noncompliance.

114. Defendants knew or should have known that their conduct would cause severe emotional distress.

115. Plaintiff in fact suffered severe emotional distress, anxiety, humiliation, and mental anguish as a result of Defendants' conduct.

116. Defendants' conduct was intentional or reckless and exceeds all bounds of decency tolerated in a civilized society.

## C. Negligent Hiring, Supervision, and Retention (Alternative / In the Event)

117. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

118. Defendant People's Check Services, Inc., and/or Employer Defendants owed Plaintiff a duty to exercise reasonable care in the hiring, supervision, and retention of individuals performing DOT drug-testing services.

119. Defendants breached that duty by allowing an individual to conduct drug tests in a sexually intrusive and improper manner.

120. Defendants knew or should have known of the risk posed by such conduct.

121. Defendants' negligence proximately caused Plaintiff's injuries and damages.

**COUNT IV — Tortious Interference with Employment and Prospective Employment**
**(Ohio Common Law)**
**(Against Eric McCoy, Renea Macko, and Gary Bradford, Individually)**

122. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

123. At all relevant times, Plaintiff had existing and prospective employment relationships with Tri County Transport, Inc. and Tri County Pallets, Inc., as well as prospective employment opportunities with third-party trucking employers.

124. Defendants Eric McCoy, Renea Macko, and Gary Bradford, acting individually and outside the scope of any legitimate privilege, intentionally and improperly interfered with Plaintiff's employment and prospective employment relationships.

125. Defendant Eric McCoy knowingly provided false and misleading information to Plaintiff's employer, including a false allegation that

126. Plaintiff was "noncompliant" during a DOT drug test, despite knowing that Plaintiff had complied and that a portion of the encounter was audio recorded.

127. Defendant Renea Macko knowingly relied upon, ratified, and repeated the false allegations provided by Defendant McCoy and used those allegations as a basis for adverse employment action against Plaintiff.

128. Defendant Gary Bradford facilitated and participated in the interference by:
a. Directing Plaintiff to People's Check Services despite knowledge of Plaintiff's complaint;
b. Acknowledging that the complained-of conduct was not required by DOT regulations;
c. Failing to correct or report the false noncompliance allegation; and
d. Participating in the sequence of events leading to Plaintiff's termination and employment interference.

129. Defendants knew or reasonably should have known that their conduct would result in Plaintiff's termination and would materially interfere with Plaintiff's ability to obtain future employment in the commercial trucking industry.

130. After Plaintiff's termination, Defendants further interfered with Plaintiff's prospective employment by communicating negative and misleading performance information to at least one prospective employer, causing a rescinded job opportunity paying approximately $2,000–$2,500 per week.

131. Defendants' interference was intentional, unjustified, and malicious, and was not privileged or protected by any legitimate business interest.

132. As a direct and proximate result of Defendants' tortious interference, Plaintiff suffered: a. Loss of existing employment;
b. Loss of prospective employment opportunities;
c. Lost wages and benefits;
d. Reputational harm; and
e. Emotional distress.

133. Defendants' conduct entitles Plaintiff to compensatory damages, punitive damages, costs, and all other relief permitted under Ohio law.

134. This count is asserted only against Defendants McCoy, Macko, and Bradford in their individual capacities and not against the employer Defendants.

## VI. DAMAGES

135. As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

136. Lost wages and benefits from March 10, 2025 to the present at a rate of approximately $1000 a week

137. Loss of future employment with employer paying $2000a week because of tri county pallets intrusion.

138. Emotional distress and humiliation;

139. Reputational harm.

140. Defendants' conduct warrants compensatory and punitive damages.

## VII. PRAYER FOR RELIEF

16

141. Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor;

B. Declare Defendants' conduct unlawful;

C. Award back pay and front pay;

D. Award compensatory and punitive damages;

E. Order corrective action regarding employment records and references;

F. Award costs and any other appropriate relief.

## VIII. JURY DEMAND

142. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Tommy Rice
Plaintiff, Pro Se
865 Grant Street
Akron, Ohio 44311

1/23/2026

21

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Tommy Rice,
Plaintiff,
v.
Tri County Transport, Inc., et al.,
Defendants.
Case No.: _____

## PLAINTIFF'S INITIAL EXHIBIT LIST

Plaintiff Tommy Rice identifies the following exhibits, subject to supplementation under Rule 26 and the Federal Rules of Civil Procedure:
Employment & Training Records

**Exhibit 1** — Training Certificate dated March 4, 2025 (49 C.F.R. § 380.503 compliance)

**Exhibit 2** — Record of Road Test signed by Wallace Gene Booth (Backing & Parking rated "Satisfactory")

**Exhibit 3** — Defendants' Fleet Safety Program (DOT Regulated)
Trainer Evidence

**Exhibit 4** — Contemporaneous handwritten training notes by Wallace Gene Booth (March 5–7, 2025)

**Exhibit 5** — Text messages from trainer Booth dated March 11, 2025 regarding Plaintiff's training performance and termination
Drug Test & Retaliation Evidence

**Exhibit 6** — Audio recording of DOT observed drug test conducted at People's Check Services (March 3, 2025)

**Exhibit 7** — Audio recording of meeting with Gary Bradford and Renea Macko (March 4, 2025)

**Exhibit 8** — Text messages between Plaintiff and supervisor Gary regarding drug test complaint

**Exhibit 9** — Email from Eric McCoy (People's Check Services) to Renea Macko alleging noncompliance
Termination & Pretext Evidence

**Exhibit 10** — Termination letter dated March 10, 2025

**Exhibit 11** — Company driver rosters / scheduling records showing Plaintiff scheduled for truck assignment

**Exhibit 12** — Any internal communications relating to Plaintiff's termination decision
Post-Termination Retaliation

**Exhibit 13** — Pulse app message or communication from prospective employer dated January 13, 2026

**Exhibit 14** — Records reflecting rescinded job opportunity paying $2,000–$2,500 per week
Administrative Records

**Exhibit 15** — EEOC Charge of Discrimination (Charge No. 532-2025-04669)

**Exhibit 16** — EEOC Notice of Right to Sue dated January 16, 2026
Damages

**Exhibit 17** — Wage and earnings documentation (pre-termination)

**Exhibit 18** — Evidence of post-termination job search and lost income

Plaintiff reserves the right to supplement this Exhibit List as discovery proceeds.
Respectfully submitted,

1/23/2026

Tommy Rice
Plaintiff, Pro Se
865 Grant Street
Akron, Ohio 44311